UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORETTA N. BANSAVICH d/b/a : | |
| LORI'S MOBIL, : | 3:07cv702 (WWE) |
|     Plaintiff, : | |
| : | |
| v. : | |
| : | |
| McLANE COMPANY, INC., : | |
|     Defendants. : | |

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

In this action, plaintiff Loretta Bansavich, d/b/a Lori's Mobil, alleges that defendant McLane Company's conduct violates federal and state antitrust laws and the Connecticut Unfair Trade Practices Act ("CUTPA"). Specifically, plaintiff attacks defendant's tying the sale of its tobacco products to the sale of other franchise-related products as anti-competitive and exclusionary market activities designed to restrain trade in the relevant market.

Defendant has filed a motion to dismiss the amended complaint for failure to establish standing and failure to state a claim.

## BACKGROUND

For purposes of ruling on this motion, the Court takes the facts alleged in the complaint to be true.

In 1994, plaintiff entered into a franchise agreement with Mobil Oil Corporation to operate a gasoline station.

Since 1994, plaintiff has purchased cigarettes and tobacco products from Manchester Tobacco & Candy Company for sale at the gasoline station.

On July 1, 1997, plaintiff entered into a convenience Store Franchise Agreement

with Mobil to operate an "Mobil on the Run" convenience store at the gasoline station. Pursuant to that agreement, plaintiff must maintain certain products defined as "Required Merchandise."

As an "On the Run" ("OTR") franchisee, plaintiff may participate in Mobil's "Exclusive Product Program," which enables the franchisee to offer certain products not otherwise available to consumer. The "Exclusive Product Program" also enables the franchisee to offer certain products free of charge or at special or reduced pricing.

According to the franchise agreement, plaintiff must purchase items solely from suppliers approved by Mobil. The agreement lists the following "Primary Merchandise Vendors" for the purchase of "Required Merchandise" and other items: McLane Corp, Eby Bron, CoreMark, Stomel Corporation, and H.T. Hackney. However, Stomel Corporation, Eby Brown, Core Mark and H.T. Hackney do not supply the "Required Merchandise" in Connecticut.  McLane is also the only northeast distributor of the "Exclusive Products" comprising the "Exclusive Product Program."

Between July 1997 and March 2006, plaintiff purchased a portion of its "Required Merchandise" and all of its "Exclusive Products" from McLane. However, in March 2006, McLane informed plaintiff that it would not sell any of its products to plaintiff unless plaintiff agreed to purchase its tobacco products. In an e-mail to plaintiff, Ken Maag, Regional Sales Manager for McLane, informed her: "In order to continue doing business with you, we will need you to order your cigarettes and smokeless from us."

Thereafter, plaintiff has been unable to purchase "Exclusive Products" or provide such products to its customers.

**DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Iqbel v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading).

Standing

Defendant first argues for dismissal on the basis of plaintiff's failure to plead the requisite elements of standing.

The doctrine of Article III standing requires a litigant to demonstrate that (1) the litigant must have suffered actual or threatened injury as a result of the illegal conduct of the defendant, (2) the injury is fairly traceable to the challenged action, and (3) the injury is redressable by a favorable decision. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982). Plaintiff's harm must be actual or imminent, not conjectural or hypothetical. Port Washington Teachers' Assoc. v. Bd. of Educ. of the Port Washington Union Free Sch. Dist., 478 F.3d 494, 498

(2d Cir. 2007). The focus of an antitrust injury is on whether the challenged conduct has actually caused harm to the plaintiff that is the type of injury contemplated by the antitrust laws. Blue Tree Hotels Inv. v. Starwood Hotels & Resorts, 369 F.3d 212, 220 (2d Cir. 2004).

The Sherman and Clayton Acts protect against a seller's exploitation of its product market power to force the buyer into the purchase of a product (the tied product) that the buyer did not want or would have preferred to purchase elsewhere on different terms. De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996).[1] In paragraphs 32 through 34 of the complaint, plaintiff asserts that she is "unable to obtain the Exclusive Products from other sources...." The complaint does not state that plaintiff has been forced to purchase any tied products. However, construing the factual allegations in favor of plaintiff, the complaint articulates a specific imminent harm that plaintiff will be forced to purchase tobacco products from defendant rather than from a competing vendor in order to obtain the "Exclusive Products." Accordingly, plaintiff has adequately alleged an imminent harm contemplated by the antitrust laws and has therefore satisfied standing.

Failure to Plead the Elements of a Tying Claim

Defendant asserts that plaintiff has failed to satisfy the minimal notice requirements of Federal Rule of Civil Procedure 8.

To state a valid antitrust claim based on an invalid tying arrangement, plaintiff

---

[1] Section 1 of the Sherman Act, 15 U.S.C. § 1, provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal."

4

must allege: (1) a tying and a tied product; (2) actual coercion by the seller that forced the buyer to accept the tied product; (3) sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product; (4) anticompetitive effects in the tied market; and (5) the involvement of a not insubstantial amount of interstate commerce in the tied market. Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp., 880 F.2d 1514, 1516-17 (2d Cir. 1989). In all claims involving a tying arrangement, plaintiff must prove that defendant has power in the tying product market. Illinois Tool Works, Inc. v. Independent Ink, Inc., 547 U.S. 28, 46 (2006).

Defendant complains that plaintiff has not sufficiently pled a valid relevant market for the tying and tied products. In analyzing market power, the court must first inquire into whether plaintiff has sufficiently pled a relevant product market. See Todd v. Exxon Corp., 275 F.3d 191, 200 (2d Cir. 2001). For antitrust claims, a relevant market has both product and geographic dimensions. See Brown Shoe Co. v. United States, 370 U.S. 294, 324 (1962). Products that have "reasonable interchangeabliity" define the relevant market. United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 404 (1956). The relevant market depends on how far buyers will go to substitute one product for another. AD/SAT v. Associated Press, 181 F.3d 216, 227 (2d Cir. 1999).

On a motion to dismiss, the court need not engage in extensive analyses of reasonable interchangeability and cross elasticity of demand. Pepsico, Inc. v. The Coca-Cola Co., 1998 WL 547088,*6 (S.D.N.Y.). Market definition is fact intensive and courts hesitate to grant motions to dismiss for failure to plead a relevant product market. Todd, 275 F.3d at 199. An anti-trust plaintiff fails to state a claim only where a proposed market definition is patently implausible on the basis of the four corners of the complaint.

Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc., 795 F.Supp. 639, 647 (S.D.N.Y. 1992).   Thus, dismissal is appropriate (1) where a plaintiff has improperly limited a product market to exclude potential substitutes, or (2) a plaintiff has failed to provide a plausible explanation as to why a market should be limited in a particular way.

According to the complaint, "Exclusive Products" are "certain products not otherwise available to consumers anywhere except OTR franchises," and may be offered "free of charge or at special or reduced pricing;" and McLane is the "only distributor to the Northeastern United States of the Exclusive Products...."  Plaintiff alleges further that "there is no ability to interchange the Exclusive Products, as they do not exist elsewhere."

The fact that defendant's market power in the tying market may be traceable to a contract that plaintiff voluntarily entered into with ExxonMobil does not necessarily foreclose a potential antitrust claim, as defendant contends here.  Queen City Pizza, Inc. v. Domino's Pizza, 124 F.3d 430, 438 (3d Cir. 1997) provides that relevant market power must flow from the market rather than from private knowing contractual relations.  However, a recent Ninth Circuit decision teaches that an antitrust claim may be viable where a defendant exploits a contractually-created market power to gain market power in a different market, where such power has not been contractually mandated.  See NewCal Industries, Inc. v. Ikon Office Solution, 513 F.3d 1038, 1050 (9th Cir. 2008).

Here, the allegations establish that tying market is confined to certain convenience store products known as "Exclusive Products" only available at an OTR franchise and that defendant may be exploiting such a contractually-created market power to coerce plaintiff into a tying arrangement forcing plaintiff to purchase tobacco

products that are not the subject of the contract at issue. Although plaintiff may have a claim that fits within NewCal's exception to Queen City, plaintiff's allegations do not set forth a plausible relevant market. The complaint has not identified the types of items comprising "Exclusive Products."

Thus the Court will grant the motion to dismiss on the federal antitrust claims but will allow plaintiff the opportunity to replead the complaint.[2]

## CONCLUSION

For the foregoing reasons, the motion to dismiss [doc. #34] is GRANTED without prejudice. However, plaintiff is permitted to replead the complaint within thirty days of this ruling's filing date.

_____

Warren W. Eginton, Senior U.S District Judge

Dated this ___ day of April 2008 at Bridgeport, Connecticut.

---

[2] Since the Court is allowing plaintiff to replead the complaint, the Court will not address the state law claims at this time.