UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORETTA N. BANSAVICH d/b/a | : | |
| LORI'S MOBIL, | : | 3:07cv702 (WWE) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| McLANE COMPANY, INC., | : | |
|     Defendants. | : | |

## MEMORANDUM OF DECISION ON MOTION TO DISMISS
## THIRD AMENDED COMPLAINT

In this action, plaintiff Loretta Bansavich, d/b/a Lori's Mobil, alleges that defendant McLane Company's conduct violates federal and state antitrust laws and the Connecticut Unfair Trade Practices Act ("CUTPA"). Specifically, plaintiff attacks defendant's tying the sale of its tobacco products to the sale of other franchise-related products as anti-competitive and exclusionary market activities designed to restrain trade in the relevant market.

This Court previously granted a defense motion to dismiss, holding that plaintiff's allegations had failed to set forth a plausible antitrust claim, but afforded plaintiff the opportunity to replead to provide facts that established the products comprising a relevant market. Plaintiff has filed an amended complaint and defendant has filed a subsequent motion to dismiss the third amended complaint. For the following reasons, the motion to dismiss will be granted.[1]

---

[1] In ruling on this motion, the Court includes facts and legal analysis from its prior ruling.

**BACKGROUND**

For purposes of ruling on this motion, the Court takes the facts alleged in the complaint to be true.

In 1994, plaintiff entered into a franchise agreement with Mobil Oil Corporation to operate a gasoline station.

Since 1994, plaintiff has purchased cigarettes and tobacco products from Manchester Tobacco & Candy Company for sale at the gasoline station.

On July 1, 1997, plaintiff entered into a convenience Store Franchise Agreement with Mobil to operate a "Mobil on the Run" convenience store at the gasoline station. Pursuant to that agreement, plaintiff must maintain certain products defined as "Required Merchandise," which include proprietary products for the franchise program, wrappings, cups, containers, napkins, re-fill vessels, uniforms, signs, interior and exterior items, fixtures, furnishings, stationary, business cards, supplies or other products that bear the Mobil marks.

As an "On the Run" ("OTR") franchisee, plaintiff may participate in Mobil's "Exclusive Product Program," which enables the franchisee to offer certain products not otherwise available to consumers. The "Exclusive Product Program" also enables the franchisee to offer certain products free of charge or at special or reduced pricing. Exclusive products include free Mobil-branded coffee or soda with purchase of Mobil-branded pastries and Mobil-branded collectible glasses and figurines related to a sporting event or movie.

According to the franchise agreement, plaintiff must purchase certain franchise items solely from suppliers approved by Mobil. The agreement lists the following

"Primary Merchandise Vendors" for the purchase of "Required Merchandise" and other items: McLane, Eby Brown, CoreMark, Stomel Corporation, and H.T. Hackney. However, Stomel Corporation, Eby Brown, Core Mark and H.T. Hackney do not supply the "Required Merchandise" in Connecticut. McLane is also the only northeast distributor of the "Exclusive Products" comprising the "Exclusive Product Program."

Between July 1997 and March 2006, plaintiff purchased a portion of its "Required Merchandise" and all of its "Exclusive Products" from McLane. However, in March 2006, McLane informed plaintiff that it would not sell any of its products to plaintiff unless plaintiff agreed to purchase its tobacco products. In an e-mail to plaintiff, Ken Maag, Regional Sales Manager for McLane, informed her: "In order to continue doing business with you, we will need you to order your cigarettes and smokeless from us."

Thereafter, plaintiff has been unable to purchase "Exclusive Products" or "Required Products" from McLane.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those

3

contexts where such amplification is needed to render the claim plausible. Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007), cert. granted, 128 S.Ct. 2931 (2008) (applying flexible "plausibility standard" to Rule 8 pleading).

Failure to Plead the Elements of a Tying Claim

Defendant argues that plaintiff has failed to remedy the flaw of her prior complaint to allege a cognizable antitrust claim.

To state a valid antitrust claim based on an invalid tying arrangement, plaintiff must allege: (1) a tying and a tied product; (2) actual coercion by the seller that forced the buyer to accept the tied product; (3) sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product; (4) anti-competitive effects in the tied market; and (5) the involvement of a not insubstantial amount of interstate commerce in the tied market. Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp., 880 F.2d 1514, 1516-17 (2d Cir. 1989). In all claims involving a tying arrangement, plaintiff must prove that defendant has power in the relevant product market. Illinois Tool Works, Inc. v. Independent Ink, Inc., 547 U.S. 28, 46 (2006).

In analyzing market power, the court must first inquire into whether plaintiff has sufficiently pled a relevant product market. See Todd v. Exxon Corp., 275 F.3d 191, 200 (2d Cir. 2001). For antitrust claims, a relevant market has both product and geographic dimensions. See Brown Shoe Co. v. United States, 370 U.S. 294, 324 (1962). Products that have "reasonable interchangeability" define the relevant market. United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 404 (1956). The relevant market depends on how far buyers will go to substitute one product for another. AD/SAT v. Associated Press, 181 F.3d 216, 227 (2d Cir. 1999). If consumers view products as

substitutes, the products comprise the same market. Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1435 (9th Cir. 1995). Queen City Pizza, Inc. v. Domino's Pizza, 124 F.3d 430, 438 (3d Cir. 1997) provides that relevant market power must flow from the market rather than from private knowing contractual relations.

On a motion to dismiss, the Court need not engage in extensive analyses of reasonable interchangeability and cross elasticity of demand. Pepsico, Inc. v. The Coca-Cola Co., 1998 WL 547088,*6 (S.D.N.Y.). An antitrust plaintiff fails to state a claim only where a proposed market definition is patently implausible on the basis of the four corners of the complaint. Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc., 795 F. Supp. 639, 647 (S.D.N.Y. 1992).

Thus, dismissal is appropriate (1) where a plaintiff has improperly limited a product market to exclude potential substitutes, or (2) a plaintiff has failed to provide a plausible explanation as to why a market should be limited in a particular way.

This Court previously held that plaintiff had not sufficiently pled a valid relevant market for the tying products based on McLane's alleged tying the sale of "Exclusive Products" to that of its tobacco products. In its prior ruling, this Court noted that the plaintiff's tying market is confined to certain convenience store products known as "Exclusive Products" only available at an OTR franchise and that defendant was allegedly exploiting such a contractually-created market power to coerce plaintiff into a tying arrangement forcing plaintiff to purchase tobacco products that are not the subject of the contract at issue. The Court had no information regarding the types of products comprising the tying market and therefore held the claim to be insufficient as a matter of law.

The Court must now consider plaintiff's amended allegations to determine whether she has established a plausible relevant product market for the tying market.

The amended complaint alleges that defendant has impermissibly tied the sale of the "Required Products" and "Exclusive Products" to that of its tobacco products. Plaintiff asserts that, although she has been able to obtain some of the "Required Products" elsewhere, McLane is the only source of "Exclusive Products." However, the tying products known as "Exclusive Products" are unrelated products grouped together according to contractual terms.

Thus, plaintiff's relevant market is facially unsustainable. Plaintiff has impermissibly limited the product market to exclude potential substitutes, such as non-Mobil-branded coffee, soda, pastries and promotional glassware or figurines that would be reasonably interchangeable by consumers; and plaintiff provides no plausible explanation as to why a market should be limited in a particular way, except for the fact that she is required to buy such items from McLane according to contractual terms. However, "particular contractual constraints assumed by a plaintiff are not sufficient by themselves to render interchangeable commodities non-interchangeable for purposes of relevant market definition." Queen City Pizza, 124 F.2d at 443; see also Forsyth v. Humana, Inc., 114 F.3d 1467, 1476 (9th Cir. 1997) (contractual limitations limiting Humana insureds to certain hospitals could not form relevant market or afford market power).

Further, plaintiff's allegations do not establish that defendant is exploiting a contractual relationship to gain monopoly power in an aftermarket that is "wholly derivative from and dependent on the primary market" as described in Newcal Indus.,

Inc. v. Ikon Office Solution, 513 F.3d 1038 (9th Cir. 2008), which involved Ikon's lease agreement and service contracts relative to copier equipment. The Ninth Circuit elaborated upon the important distinction between the "wholly derivative aftermarket for replacement equipment and lease-end services" from that of the aftermarkets for pizza ingredients and paper cups in Queen City Pizza and hospital care in Forsyth:

> The markets for pizza ingredients and paper cups would exist whether or not there was a market for pizza chain franchises, and the market for acute care hospitals would exist whether or not there was a market for health insurance. But the market for durable micrographic equipment parts and services would not exist without the market for durable micrographic equipment, and the market for replacement copiers and lease-end services would not exist without the market for copier leases and copier services.

Id. at 1049. In this instance, plaintiff cannot plausibly allege the existence of a wholly derivative aftermarket. The market for any of the products referred to in the complaint–the listed items of "Required Products" or "Exclusive Products" and the tied tobacco products–would exist regardless of whether there was a market for ExxonMobil OTR franchises. Further, tobacco products cannot be construed as a derivative aftermarket for "Exclusive Products" or "Required Products." Accordingly, plaintiff's claim does not fit within Newcal's description of a plausible antitrust claim.

Further, defendant asserts that plaintiff's allegations have set forth neither a plausible market for the alleged tied tobacco products nor anti-competitive effects in the tied market. Defendant complains that plaintiff's alleged tied market of cigarettes and tobacco products is vague and cannot establish a relevant market in terms of cross-elasticity of demand or interchangeability of use. While the Court agrees that plaintiff's allegation of tobacco products market is vague, the Court will assume, for purposes of ruling on this motion, that she has alleged a relevant tied market.

However, plaintiff's complaint is still flawed because it does not allege factual allegations that render plausible its conclusory assertion that McLane's conduct has "anti-competitive effects on the Competing Vendor and other vendors of Tobacco Products in discouraging or prohibiting the purchase of cigarettes and tobacco from sources other than McLane" and was intended to "diminish competition in the market for Tobacco Products." The complaint sets forth allegations supportive of an injury to plaintiff's business, but antitrust injury must represent an adverse effect on competition as a whole in the relevant market rather than to plaintiff. Capital Imaging Assoc., P.C. v. Mohawk Valley Medical Assocs., Inc., 996 F.2d 537, 543 (2d Cir. 1993). Thus plaintiff's complaint fails to satisfy the pleading requirement under Twombly, and the Court will grant the motion to dismiss count one.

The Court will not afford the plaintiff the opportunity to replead her claim since it appears that she appears unable to cure the deficiencies in the complaint to plead a cognizable antitrust tying claim. See Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986) (denial of leave to amend proper where plaintiff had already been given one opportunity to replead with greater specificity).

State Law Claims

Plaintiff's remaining claims of violations of state antitrust law and CUTPA arise under state law. Accordingly, under 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over these claims. See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).

## CONCLUSION

For the foregoing reasons, the motion to dismiss [doc. #52] is GRANTED. The state law claims are dismissed without prejudice due to this Court's declination of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

The clerk is instructed to close this case.


_____/s/_____

Warren W. Eginton, Senior U.S District Judge

Dated this \_31st\_ day of October 2008 at Bridgeport, Connecticut.